COMMONWEALTH of Pennsylvania,
ex rel. Kenneth FORTUNE,
Appellant,

v.

Martin L. DRAGOVICH, Appellee.

Superior Court of Pennsylvania.

Submitted Oct. 29, 2001.
Filed Feb. 19, 2002.

Kenneth Fortune, pro se, for appellant.

John J. Talaber, Camp Hill, for Drago-vich, appellee.

Before: JOHNSON, HUDOCK, and TAMILIA, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Kenneth Fortune appeals, *pro se*, from the trial court's order denying his petition for writ of *habeas corpus* and his request to proceed *in forma pauperis*. Fortune, a prison inmate, contends that prison officials transferred him from one institution to another and imposed more restrictive conditions of confinement in retaliation for his prison reform activities and thus violated his constitutional rights. We conclude that Fortune's allegations do not provide a cognizable basis for relief on a *habeas corpus* petition. Accordingly, we affirm the trial court's order denying his petition and request to proceed *in forma pauperis* (IFP).

¶ 2 Fortune is currently incarcerated at the State Correctional Institution (SCI) at Camp Hill (Camp Hill) following transfer in May 2001 from SCI–Huntingdon. Fortune is held in administrative custody in Camp Hill's "Special Management Unit" (SMU) which, he alleges, imposes more stringent conditions of confinement than those under which he was held at SCI–Huntingdon. In response to his transfer, Fortune filed his petition for writ of *habeas corpus* with the trial court. In his petition, Fortune asserts that he was transferred to Camp Hill and confined to the SMU in retaliation for filing prisoner grievances and commencing litigation against prison officials while at Huntingdon. Fortune asserts that written Department of Corrections policy fails to provide grounds for his confinement in administrative custody, and that, accordingly, his detention infringes constitutionally protected "liberty interests," and violates his rights to due process and equal protection. The trial court, upon review, dismissed Fortune's petitions without hearing, concluding that his IFP petition was frivolous and that his *habeas* petition failed to state a cognizable basis for relief. Fortune filed this appeal.

¶ 3 Fortune raises the following questions for our review:

I. Did the status of Appellant['s] criminal conviction render that proper habeas venue jurisdiction [sic] was properly sought under Pa.R.Crim.P. 1701(b); and did the Appellant['s] petition state sufficient material facts that would entitle Appellant to habeas relief?

II. Did the trial court err as a matter of law on ruling that Appellant's request

to proceed in forma pauperis was frivolous where [the] underlying claim clearly alleged a violation of constitutional rights?

Brief for Appellant at 3.

■ ¶ 4 We interpret Fortune's first question as a challenge to the trial court's conclusion that Fortune's petition did not state a cognizable basis for *habeas corpus* relief. Our standard of review of a trial court's order denying a petition for writ of *habeas corpus* is limited to abuse of discretion. *See Commonwealth, Dep't of Corrections v. Reese*, 774 A.2d 1255, 1261 (Pa.Super.2001). Thus, we may reverse the court's order only where the court has misapplied the law or exercised its discretion in a manner lacking reason. *See Lachat v. Hinchcliffe*, 769 A.2d 481, 487 (Pa.Super.2001) (defining abuse of discretion). As in all matters on appeal, the appellant bears the burden of persuasion to demonstrate his entitlement to the relief he requests. *See Miller v. Miller*, 744 A.2d 778, 788 (Pa.Super.1999).

■ ¶ 5 The availability of *habeas corpus* in Pennsylvania is both prescribed and limited by statute. *See* 42 Pa.C.S. §§ 6502 (Power to issue writ); 6503 (Right to apply for writ). Subject to these provisions, the writ may issue only when no other remedy is available for the condition the petitioner alleges or available remedies are exhausted or ineffectual. *See Reese*, 774 A.2d at 1260. Thus, "*habeas corpus* should not be entertained . . . merely to correct prison conditions which can be remedied through an appeal to prison authorities or to an administrative agency." *Commonwealth ex rel. Bryant v. Hendrick*, 444 Pa. 83, 280 A.2d 110, 113 (1971). Moreover, "it is not the function of the courts to superintend the treatment and discipline of prisoners in penal institutions." *Id.* Accordingly, the writ may be used only to extricate a petitioner from illegal confinement or to se-

cure relief from conditions of confinement that constitute cruel and unusual punishment. *See id.; Weaver v. Pa. Bd. of Probation and Parole*, 688 A.2d 766, 775 n. 17 (Pa.Cmwlth.1997). "[T]he failure or refusal of prison authorities to exercise discretion in a particular way may not be reviewed in a *habeas corpus* proceeding." *Commonwealth ex rel. Tancemore v. Myers*, 189 Pa.Super. 270, 150 A.2d 180, 182 (1959).

■ ¶ 6 In this matter, Fortune asserts that prison officials directed his transfer to SCI–Camp Hill in retaliation for his prison grievance and litigation activities. Brief for Appellant at 7, 11. He contends further that their decision to hold him in administrative custody is not consistent with the provisions of a Department of Corrections policy prescribing bases for a prisoner's commitment to administrative custody. Brief for Appellant at 7. Both acts, he argues, deprived him of equal protection and due process of law and infringed a protected "liberty interest" under the Fourteenth Amendment. Brief for Appellant at 12. We find Fortune's assertion of the foregoing constitutional deprivations "no more than an unwieldy tool to convince us to see the law differently than it is." *Buehl v. Horn*, 761 A.2d 1247, 1248 (Pa.Cmwlth.2000). Regardless of whether Fortune's allegations are true, they do not provide a cognizable basis for issuance of a writ of *habeas corpus*. Indeed, the allegations of fact in Fortune's petition assert primarily that his grievance arises from prison officials' exercise of discretion in superintending the placement of prisoners. *See Tancemore*, 150 A.2d at 182 (precluding issuance of *habeas corpus* on the basis of administrative discretion of prison officials). Although such discretionary exercises are not immune from judicial scrutiny, they are appropriately addressed in a claim of deprivation of constitutional rights

under color of state law as prescribed by the federal Civil Rights Act, 42 U.S.C. § 1983. *See Johnston v. Lehman,* 148 Pa. Cmwlth. 98, 609 A.2d 880, 884 (1992). Although the potential for relief in such an action does not preclude review of claims in *habeas corpus,* such claims must be based on "patent and serious deprivations" of a constitutional right sufficient to establish "cruel and unusual punishment." *See Bryant,* 280 A.2d at 113–14. Fortune's allegations concerning his transfer between prisons and housing in the SMU do not rise to this level and are, consequently, insufficient grounds for issuance of a writ of *habeas corpus. See Meachum v. Fano,* 427 U.S. 215, 224–226, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (declining to recognize prisoner's occupancy of particular prison or housing unit as subject of constitutional protection).

■ ¶ 7 Similarly, Fortune's limited allegations concerning living conditions in the SMU fail to raise grounds even remotely sufficient to establish entitlement to relief in a *habeas corpus* petition. Fortune does not contend that he is being illegally detained. Moreover, his sole claim of "cruel and unusual punishment" arises from the refusal of prison officials to make antiperspirant available to inmates in administrative custody. Brief for Appellant at 16. Although this condition may be unpleasant, it is by no means equivalent to the indignities we have recognized in prior cases as "cruel and unusual punishment." *See Johnson v. Desmond,* 441 Pa.Super. 632, 658 A.2d 375, 378 (recognizing as "cruel and unusual" conduct of prisoner guards in waking Afro–American inmate from nighttime sleep wearing white sheets suggestive of Ku Klux Klan activity). Indeed, our courts have recognized that affronts substantially more serious than those of which Fortune complains do not constitute "cruel and unusual punish-

ment." *See id.* at 377–78 (collecting cases). We conclude accordingly that Fortune's allegations provide no basis upon which the trial court might issue a writ of *habeas corpus.* Thus, the trial court did not abuse its discretion in dismissing Fortune's petition without a hearing.

■ ¶ 8 In his second question on appeal, Fortune challenges the trial court's dismissal of his petition to proceed *in forma pauperis* on finding the underlying petition frivolous. Brief for Appellant at 3. Fortune bases his assertion on Pennsylvania Rule of Civil Procedure 240, which prescribes prerequisites upon which indigent persons may pursue civil litigation free of customary court costs. Fortune provides no authority to establish that this rule of civil procedure applies to pursuit of a petition for *habeas corpus;* none of the cases Fortune cites in support of his reliance on this rule arose in the context of *habeas corpus.* Assuming the applicability of the rule, we conclude nonetheless that the court did not err in dismissing Fortune's petition. Because Fortune's petition for writ of *habeas corpus* failed to allege a cognizable basis for relief on the underlying claim, the court did not err in finding it "frivolous" for purposes of Rule 240(j). *See Thomas v. Holtz,* 707 A.2d 569, 570 (Pa.Cmwlth.1998) (concluding that Rule 240(j) "compels courts to avoid granting *in forma pauperis* status to litigants who fail to present a valid cause of action").

¶ 9 Accordingly, we affirm the trial court's order dismissing Fortune's petition for writ of *habeas corpus* and petition to proceed *in forma pauperis.*

¶ 10 Order AFFIRMED.